UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID PASCHALL, JR.,

    Plaintiff,

v.                                                                  Case No: 8:16-cv-3312-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**ORDER**

Plaintiff, David Paschall, Jr., seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

**A.    Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 6, 2013. (Tr. 270–82.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 185–89, 204–08.) Plaintiff then requested an administrative hearing. (Tr. 215.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 87–125.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 69–81.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied. (Tr. 1–7.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1985, claimed disability beginning on July 16, 2011. (Tr. 270.) Plaintiff has at least a high school education. (Tr. 79, 90.) Plaintiff's past relevant work experience includes work as a construction laborer and a telemarketer. (Tr. 79.) Plaintiff alleged disability due to having bipolar disorder and schizophrenia. (Tr. 128.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since October 25, 2012. (Tr. 72.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "mental disorders variously diagnosed as schizoaffective disorder, bipolar disorder, substance abuse, substance induced psychotic state; expressive writing disorder, and reading disorder." (Tr. 72.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 72–74.) The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [T]he claimant can work at all exertion levels that retain the ability to understand, remember and carryout simple tasks that does require more than occasional interaction with the general public, supervisors and co-workers. He is capable of making simple wor[k]-related decisions and responding appropriately to usual unskilled work situations, and routine changes in an unskilled work setting. Finally, the claimant will be off task five percent of the workday.

(Tr. 74.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 75.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 78–79.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner, kitchen helper, and grounds keeper. (Tr. 80.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 80.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred, at step three of the sequential process, by failing to properly evaluate whether Plaintiff meets Listing 12.03; and (2) the ALJ failed to properly consider the side effects Plaintiff experiences from his medications. For the reasons that follow, these contentions do not warrant reversal.

**A. Listing 12.03**

Plaintiff argues that the ALJ failed to properly evaluate whether Plaintiff meets Listing 12.03. The version of Listing 12.03 in effect on the date of the ALJ's decision[1] stated as follows:

> 12.03 Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
>
> 1. Delusions or hallucinations; or
>
> 2. Catatonic or other grossly disorganized behavior, or
>
> 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
>
> a. Blunt affect; or
>
> b. Flat affect; or
>
> c. Inappropriate affect; or

---

[1] The Court directed the parties to advise the Court which version of Listing 12.03 to apply in this case because both parties cited the version of Listing 12.03 that became effective on January 17, 2017, in their memoranda. (Dkt. 25.) In their joint memorandum, the parties notified the Court that they agree that the version of Listing 12.03 in effect at the time the ALJ rendered her decision in 2015, not the current version, should be applied. (Dkt. 29.)

4. Emotional withdrawal and/or isolation;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Social Security Administration, Program Operations Manual System, DI 34132.009, *Mental Listings from 12/18/07 to 09/28/16: 12.00 Mental Disorders (Effective Date: 09/18/00)*, Obsolete Versions of Part A, the Listing of Impairments, (last revised Jan. 13, 2017), http://policy.ssa.gov/poms.nsf/lnx/0434132009.

Looking to the ALJ's opinion, the ALJ analyzed whether Plaintiff met paragraph C of Listing 12.03 as follows:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There are no repeated episodes of decompensation of extended duration, there is no evidence of a residual disease process that results in the requisite

marginal adjustment inabilities, and there is no evidence of a [sic] one or more years' inability to function outside a highly supportive living arrangement.

(Tr. 73.) Plaintiff argues that while the ALJ addressed whether Plaintiff met the paragraph B criteria, she did not adequately address whether the paragraph C criteria were met. (Dkt. 21 at 6–7.) Specifically, Plaintiff contends as follows:

> The court may infer from the ALJ's discussion of the paragraph B criteria that he concluded that subpart 1 (repeated episodes of decompensation) of the paragraph C criteria had not been met. But as to subparts 2 and 3 the ALJ articulates no specific reasons for finding that Plaintiff's schizophrenia did not meet this portion of the criteria, nor is there a discussion of the evidence on which the ALJ relied in reaching this conclusion.

(Dkt. 21 at 7.) In response, Defendant argues that the ALJ addressed paragraph C, and even if the ALJ did not fully address the paragraph C criteria, which Defendant does not concede, under Eleventh Circuit precedent the ALJ was not required to "mechanically recite" the evidence or the Listings she considered. (Dkt. 24 at 13–14) (quoting *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673 (11th Cir. 2015)).

It is Plaintiff's burden to prove that his impairment meets a Listing. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) ("At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience."). Importantly, while the ALJ must consider whether a claimant's impairments meet or equal a Listing "it is not required that the Secretary mechanically recite the evidence leading to her determination" and "[t]here may be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (finding no error when the ALJ did not explicitly state whether the claimant met a Listing, finding "it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments"); *Flemming*, 635 F. App'x at 676 ("While the ALJ is required to consider the Listing of Impairments

in making a decision at step three, we do not require an ALJ to 'mechanically recite' the evidence or listings she has considered."). Because the ALJ is not required to "mechanically recite the evidence leading to her determination," *Hutchison*, 787 F.2d at 1463, her statements that Plaintiff did not meet any of the three subparts of paragraph C is a sufficient finding at step three of the sequential process. Accordingly, Plaintiff's legal contention that the ALJ's decision lacks sufficient reasoning at step three does not warrant reversal.

Moreover, the ALJ's decision includes a discussion of the factors relevant to paragraph C of Listing 12.03. First, regarding episodes of decompensation, the ALJ explained that Plaintiff had two hospitalizations, in 2011 and 2012, that were prompted by substance abuse. (Tr. 75–76.) Specifically, Plaintiff's 2011 hospitalization occurred after he had "been taking ecstasy for several days," and he stated to physicians that the hallucinations "'must be a drug thing.'" (Tr. 379, 488.) He was again hospitalized in 2012 after "using drugs on the streets such as ecstasy and perhaps spice." (Tr. 429.) After citing these records, the ALJ concluded that Plaintiff's "issues were only at their worst when abusing drugs, and there has been no such hospitalization for substance abuse since." (Tr. 75.) Next, regarding whether even a minimal increase in mental demands or a change in environment would cause Plaintiff to decompensate, the ALJ found Plaintiff capable of completing simple tasks and responding appropriately to routine changes in a work setting. (Tr. 74.) Finally, regarding Plaintiff's ability to function outside a highly supportive living arrangement, while the ALJ noted that Plaintiff lives with family, she also considered evidence that he is able to bathe himself, go to school, do yardwork and light housework, leave the house alone, do grocery shopping, pay bills, count change, handle a savings account, and use a checkbook. (Tr. 72–73) (citing Tr. 317–24.) Accordingly, the ALJ's decision reflects adequate consideration of the Listing 12.03(C) factors. *See Flemming*, 635 F. App'x at 676–77 (concluding

that the ALJ's failure to discuss Listings 12.02 and 12.03 "does not necessarily show that the ALJ did not consider those listings" because "the remainder of the ALJ's decision reflects that she considered evidence of [claimant's] psychotic symptoms").

### B. Medication Side Effects

Plaintiff next contends that the ALJ did not properly address the side effects of Plaintiff's medications in evaluating Plaintiff's RFC. (Dkt. 21 at 7–8.) Plaintiff argues that his RFC should include, "[a]t a minimum," the limitation that Plaintiff "should avoid extreme heat and dangerous moving machinery," and that the addition of this limitation affects the ALJ's findings at step five of the sequential process. Therefore, Plaintiff requests that the case be remanded for the ALJ to address Plaintiff's side effects from his medications. (*Id.*) In response, Defendant argues that although Plaintiff reported side effects as part of his disability application, Plaintiff did not cite any evidence showing he made such reports to any treating physicians. (Dkt. 24 at 15.) Thus, Defendant contends that substantial evidence shows that Plaintiff's alleged side effects are not significant because there is no evidence that Plaintiff reported his side effects to treating physicians or that physicians were concerned about the side effects. (Dkt. 24 at 15.)

In evaluating a claimant's subjective symptoms, the ALJ considers the "type, dosage, effectiveness, and side effects of any medication" the claimant takes. 20 C.F.R. § 404.1529(c)(3)(iv); *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 238 (11th Cir. 2011) ("A factor relevant to a claimant's subjective symptoms that the Commissioner 'will consider' includes the 'type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms.'"). As an initial matter, "[b]ecause [Plaintiff] was represented by counsel at his hearing, the ALJ was not required to inquire in detail about his alleged side effects." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011).

Further, "[a]n ALJ's determination that medication side effects do not present a significant problem is supported by substantial evidence if the claimant made only an isolated complaint about the side effects and the record does not suggest her doctors were concerned about the side effects." *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (citing *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990), which held that the ALJ's conclusion that medication side effects "did not present a significant problem" was supported by substantial evidence because the claimant's testimony about the side effects of her medication was limited and "the record did not disclose any concerns about side effects by the several doctors who examined and treated her"); *Colon ex rel. Colon*, 411 F. App'x at 238 ("Substantial evidence supports the ALJ's decision to discredit [claimant's] complaints as they related to medication side effects: none of [claimant's] doctors reported any side effects from his medications, and he did not complain to them of any side effects.").

Here, Plaintiff does not cite any record evidence in which his treating physicians expressed concerns about the side effects from his medication. Instead, in support of his argument, Plaintiff cites function reports prepared as part of his application for disability benefits. First, in an undated and unsigned Social Security Administration Function Report, Plaintiff reported that his medications caused dizziness and upset his stomach. (Tr. 340.) Next, in a May 2013 Function Report prepared by Plaintiff and Leslie Martinez, Plaintiff reported that his medications cause headaches and make him tired, although he could not identify which of his four medications caused these side effects. (Tr. 324.)

In her decision, the ALJ addressed Plaintiff's report of side effects in the May 2013 Function Report and, at the hearing, the ALJ asked Plaintiff about whether he experienced side effects from his medication. Specifically, in evaluating Plaintiff's RFC and the intensity,

persistence, and limiting effects of Plaintiff's symptoms, the ALJ cited the May 2013 Function Report, stating that Plaintiff reported headaches and sleepiness from his medications. (Tr. 74.) *See Brown*, 680 F. App'x at 826 (holding that the ALJ "did not fail in his duty to consider her side effects in determining [the claimant's] RFC" because the ALJ discussed the claimant's hearing testimony and treatment notes in which the claimant complained to physicians about her side effects). Further, at his hearing, the ALJ asked Plaintiff whether he experiences side effects from his medications, to which Plaintiff responded, "I don't know. I do get tired from them." (Tr. 108.) Plaintiff's father testified that Plaintiff's mother would give Plaintiff half his prescribed medications when Plaintiff had classes so that Plaintiff "wouldn't be so tired." (Tr. 116.)

Therefore, apart from Plaintiff's subjective statements regarding his side effects, made at the hearing and as part of his application for benefits, Plaintiff presents no evidence regarding his medications' side effects. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010) ("Nothing in [the claimant's] testimony suggested that her headaches and dizziness were severe enough to be disabling either alone or in combination with her other impairments. Apart from her own subjective statements, there is no evidence in the record that any of [the claimant's] other symptoms actually were caused by her medications."); *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006) ("Similarly, the ALJ did not err in discrediting [the claimant's] testimony regarding side-effects from her medications because the record includes no evidence that [the claimant] consistently complained to her doctors of any side-effects."). Accordingly, Plaintiff's contention that the ALJ failed to properly consider Plaintiff's side effects from his mediations does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 18, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record